| | |
|---|---|
| THOMAS BROWN, *et al.,* | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WESTERN SKY FINANCIAL, LLC,** | ) |
|     *et al.,* | ) |
| | ) |
|     **Defendants.** | ) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS PAYDAY FINANCIAL, LLC AND JOHN PAUL REDDAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs respectfully submit their brief opposing the motion filed at Docket 91 by Defendants Payday Financial, LLC and John Paul Reddam, seeking pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss Plaintiffs' Second Amended Complaint ("SAC") for lack of personal jurisdiction.   The motion should be denied.

### 1.    Introduction.

This case involves issues of personal jurisdiction over Defendants involved in an internet loan business.  After North Carolina banned payday lending, some companies sought to evade the law by a variety of subterfuges.  One of these subterfuges was to offer the loans online rather than via a brick-and-mortar store.  Where a brick-and-mortar store would hold a borrower's postdated check to secure the loan, on the internet another method was available: using electronic-debit access to borrower's bank accounts.  Also, the internet lenders took advantage of the amorphous physical location of a website to

claim that though they made loans to North Carolina borrowers, those loans were not made in North Carolina and North Carolina law could not control.

Personal jurisdiction can be based on the act of signing a contract. Here, Mr. Reddam signed the key agreements that allowed the Western Sky loan business and its website to exist. He knew that the purpose of these contracts was to facilitate soliciting North Carolina residents for loans, and knew he might get sued as the agreements even indemnified Western Sky in the event of lawsuits. By signing these agreements, Reddam purposefully availed himself of the privilege of conducting business in the State of North Carolina, and it is therefore fair and equitable that he should be subject to jurisdiction here just as he has been elsewhere in other similar actions in other States.

Furthermore, the Western Sky website these agreements facilitated was what is known as an "interactive" website. It not only solicited business but allowed consumers to apply for loans online and the loan money was then electronically deposited into their banks and they received confirming emails. Because Reddam approved the setting up and funding of this website he again purposefully availed himself of the privilege of conducting business in the State of North Carolina and was directly and personally involved in the underlying tort.

In addition, Reddam through his actions put a product (internet loans) into the stream of commerce (through the Western Sky website on North Carolina resident's personal computers and Western Sky television ads seen in North Carolina homes) which harmed individuals (the borrowers) in our State. Just as a product manufacturer can be subject to personal jurisdiction for putting a dangerous product into the stream of

commerce, so too may Reddam here for his central involvement in setting up and directing the loan business which directed loans to North Carolina borrowers. Reddam also admits engaging in contacts with financial institutions in North Carolina presumably related to the loan business, and to directing and supervising CashCall, Inc. and Delbert Services Corporation managers, and it is known that CashCall and Delbert directed collection efforts and contacts at named Plaintiffs and North Carolina borrowers.

The other moving Defendant, Payday Financial, LLC, admits that it was the sole member of Western Sky Financial, LLC through February 1, 2011. Two of the named Plaintiffs, Melinda Long and Kevin Hayes, received Western Sky loans prior to that date, made payments, and received communications and collection efforts. Because Payday Financial was the sole member of Western Sky when some of the loans were made and because evidence developed in other litigation (discussed below) reflects it was involved in the loans, it is fair to hold it subject to personal jurisdiction.

In the alternative, Plaintiffs request leave to engage in discovery on personal jurisdiction issues. To date, there has been no discovery in this case.

2. **Relevant Facts**.

    A. ***Facts Regarding Reddam.***

Reddam admits that he is the "sole owner and director" of CashCall and Delbert. (Reddam Dec., Docket 92-2, ¶ 2). He admits that Delbert is licensed to do business in States including North Carolina. (*Id*., ¶ 5). Per the Second Amended Complaint, Delbert made collection efforts on the loans, after they were assigned by Western Sky to CashCall. (SAC ¶¶ 20, 23). Delbert is a debt collector subject to licensing in North

3

Carolina. (SAC ¶ 86). CashCall and Delbert engaged in numerous communications with North Carolina residents regarding the loans and took electronic debits from North Carolina bank accounts. (SAC ¶¶ 20, 23, 83-85, 89, 93, 102, 104). CashCall also wrote to the Attorney General insisting the loans were valid. (SAC ¶ 98). Finally, as reflected by the documents attached to the SAC, Reddam's companies that he controlled purposefully continued to make the loans and make collection efforts even after the Attorney General wrote them to stop. *See* SAC Exs. 7-11.

Reddam admits he engaged in communications by telephone and email on behalf of CashCall and Delbert with "large financial institutions" in North Carolina. (Reddam Dec., Docket 92-2, ¶ 6). As there has been no discovery yet, Plaintiffs knows no further details of these contacts. Plaintiffs are entitled to the inference that these communications regarded the loan business and are entitled to discovery on this issue.

Reddam self-servingly claims that "I instruct CashCall and Delbert managers and supervisors to ensure all applicable laws are obeyed." (Reddam Dec., ¶ 6). This may be taken as an admission that he was directly involved in legal compliance activities. He admits that CashCall and Delbert were engaged in servicing and collection activities regarding the loans. (*Id.*). CashCall and Delbert employees engaged in numerous contacts and communications with the named Plaintiffs seeking to collect on their loans in North Carolina. (*See* SAC Exs. 1-2, 7-9). This occurred even after the Attorney General sent cease-and-desist letters.

Reddam in his Declaration neglects to discuss the fact that he personally signed the key contracts that set up and allowed the Western Sky loan business to exist. These

4

contracts contemplated an internet lending scheme to be offered over the internet throughout the United States including in North Carolina. Reddam therefore signed contracts calling for performance in North Carolina. Specifically, during the pertinent times, Reddam was the President, CEO and sole stockholder of CashCall. (SAC ¶¶ 20, 21). In his capacity as the chief executive of CashCall he signed the key agreements with Western Sky that allowed the internet lending scheme to operate. On or about December 28, 2009, he signed an "Agreement for the Assignment and Purchase of Promissory Notes" on behalf of a wholly-owned subsidiary of CashCall, which was a contract also signed by Western Sky. (SAC Ex. 6 filed at Docket No. 89-6).

This agreement describes how Western Sky would, as the New Hampshire Banking Department found, essentially act as a "front" for CashCall. (SAC ¶¶ 67-68 & Ex. 5). Western Sky assigned all of the loans it made "on a daily basis" to a CashCall subsidiary (Docket No. 89-6, Agreement, p. 1). CashCall (through its subsidiary) paid Western Sky a monthly "administration fee" and other fees to "reimburse Western Sky for all costs of maintenance, repair and/or update costs associated with Western Sky Financial's server." (*Id.*, pp. 2-3). Thus CashCall funded the computer systems related to the internet loan business. CashCall also funded a "Reserve Account" based on the value of purchased notes historically in the loans, was responsible for "all collection efforts" and indemnified Western Sky for any civil or criminal claims. (*Id.*, pp. 3-4).

In addition, on the same date Reddam also signed with Western Sky a "Promissory Note" and an "Agreement for Service." (SAC ¶ 69 & Ex. 6). These agreements also were central to setting up the business. Under the latter, Reddam agreed his CashCall

5

subsidiary would provide "Customer Service Support," "underwriting requirements review," "marketing services," "web site hosting and support" and other services. (*Id.*). Thus this agreement directly shows Reddam personally involved in structuring and setting up the arrangements for the Western Sky website through which the loans were made, as well as for the customer service, marketing, and so forth. (See copy of Western Sky website pages at SAC Ex. 3). Plaintiffs allege these arrangements were a subterfuge, sham and evasion violating North Carolina small loan law, and Mr. Reddam was directly personally involved by signing these contracts.

### B. *Facts Regarding Payday Financial.*

The other moving Defendant, Payday Financial, admits that it was the sole member of Western Sky Financial, LLC through February 1, 2011. (Lawrence Dec., Docket 92-1, ¶ 4). Plaintiff Melinda Long received loans from Western Sky prior to that time. (SAC ¶ 78, alleging October 2010 loan). Ms. Long received a $1000 loan and made repayments totaling $1091. (SAC ¶ 78). Further CashCall sent collection emails and made collection efforts against her prior to February 1, 2011. (SAC ¶ 83, alleging collection emails including in October 2010 and January 2011).

Likewise Plaintiff Kevin Hayes saw a Western Sky TV ad and received a Western Sky loan in October 2010. (SAC ¶¶ 95-96). Payday Financial was thus the sole member of the Western Sky LLC purporting to solicit North Carolina customers over the internet, running TV ads in North Carolina, accepting loan applications, disbursing loan funds and sending related emails, during some of the pertinent times.

In addition, evidence developed in the Federal Trade Commission's case against Western Sky reflects that that Payday Financial participated in the original formation of the Western Sky LLC. (See **Exhibit 1** -- D.S.D. Case No. 3:11-cv-03017-RAL, filing dated Jan. 31, 2013 at Docket 95 therein, p. 2). Payday Financial and Western Sky shared the same physical offices. (Id., p. 5). Payday Financial offered loans over the internet and has stated it offered loans through Western Sky. (Id., p. 6). It provided loans across the United States except in four States, and helped collect on loans. (Id., p. 8).

The Lawrence Declaration baldly states that Payday Financial is a "wholly distinct corporate entity" from Western Sky. (Lawrence Dec., Docket 92-1, ¶ 5). It also states that this action does not involve Payday Financial loans. (Id., ¶ 10). However, Ms. Lawrence does not address the findings of the District of South Dakota Federal Court by order filed September 30, 2013, that Payday Financial made loans throughout the United States, filed collection actions against borrowers and used wage garnishment packets between 2009-2011 that contained deceptive representations. (SAC ¶ 168 & Ex. 16).

## ARGUMENT

### 1. Mr. Reddam is Properly Subject to Personal Jurisdiction.

"It is well settled that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise." *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 462 S.E.2d 832, 834 (1995). Further, "a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State." *Tom Togs, Inc. v. Ben Elias Indust. Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 786 (1986). "A single transaction in some instances may be sufficient to satisfy the

7

requisite minimum contacts if it gives rise to the liability asserted in the suit." *Barclays Leasing, Inc. v. National Business Systems, Inc.*, 750 F.Supp. 184, 187 (W.D.N.C. 1990) (citing cases); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

Here, Mr. Reddam signed the key agreements that allowed the Western Sky loan business and its website to exist and to make loans in North Carolina. These agreements, which funded the business and accounted for its website, had a "substantial connection" to this State. Mr. Reddam knew that the purpose of these contracts was to facilitate internet loans including in North Carolina. By signing these agreements, he purposefully availed himself of the privilege of conducting business in the State of North Carolina, and it is therefore fair and equitable that he should be haled into Court here.

These agreements included provisions stating that Mr. Reddam's company CashCall indemnified Western Sky against claims that the loans were illegal. This reflects both how he was involved with the North Carolina business and contemplated the possibility of facing a possibly lawsuit here.

The contracts that Mr. Reddam signed had a substantial connection with North Carolina since they directly involved the internet loan business in North Carolina. *See also Time Corp. v. Encounter, Inc.*, 50 N.C. App. 467, 471, 274 S.E.2d 391, 393-94 (1981) (contractual contacts may support jurisdiction); *Goldman v. Parkland*, 277 N.C. 223, 176 S.E.2d 784 (1970) (same).

The timing of these agreements in 2009 is significant insofar as it occurred after the North Carolina payday lending authorizing statute expired in 2001 (SAC ¶¶ 35-37) and after prior "rent-a-bank" schemes had been deemed unlawful, including the North

8

Carolina Commissioner of Bank instituting proceedings against Advance America for a "rent-a-bank" arrangement in 2005 (SAC ¶ 40). In addition, the State of West Virginia suing CashCall and Reddam for a "rent-a-bank" scheme in 2008. (SAC Ex. 5, Ex. 15). Thus Mr. Reddam deliberately structured and entered into the "rent-a-tribe" arrangement with Western Sky <u>after</u> prior payday lending arrangements had been challenged. If the Plaintiffs are successful in showing that the entire business model was a contrived subterfuge to evade North Carolina law, then the negotiation and formation of these agreements to structure and allow the business to occur is critical.

Furthermore, the Western Sky website these agreements facilitated was "interactive," because it solicited business, allowed consumers to apply for loans online, triggered confirming emails, and led to electronic deposits and debits of funds with North Carolina banks. Because Mr. Reddam was directly involved in setting up this website through the underlying agreements he signed, he again undertook acts that purposefully availed himself of the privilege of conducting business in the State of North Carolina. *See Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y. 2000) (interactive website gave rise to jurisdiction where "customers in New York may apply for loans on-line"). Here, the Western Sky website solicited loans from residents of North Carolina and allowed loan applications to be made online. *See also Interactive ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713-14 (4th Cir. 2002) (discussing "sliding scale" for website contacts). Mr. Reddam signed the underlying agreements between CashCall and Western Sky funding and setting up the website.

9

In other cases, courts have found personal jurisdiction over corporate officers and individual defendants involved in payday lending schemes and have noted how corporate officers can be liable for their direct personal involvement in a tort. *See Gunnings v. Internet Cash Enter. of Asheville*, No. 5:06CV98, 2007 WL 1931291 (W.D.N.C. July 2, 2007) (denying motion to dismiss on personal jurisdiction grounds, payday lending case); *McQuillan v. Check 'n Go*, No. 04-CVS-2858, Order filed July 15, 2009, N.C. Superior Court (same); *Hager v. Check Into Cash*, No. 04-CVS-2859, Order filed June 29, 2009, N.C. Superior Court (same) (**Exhibit 2** – unreported cases).

These orders reflect how courts have "'readily' found jurisdiction constitutional in tort cases, because of the 'powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors.'" *Summit Lodging, LLC v. Jones, Spitz, Moorhead, Baird & & Albergotti, P.A.,* 176 N.C. App. 697, 703, 627 S.E.2d 259, 265 (2006) (quoting *Saxon v. Smith,* 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997). The State has an interest in protecting consumers and enforcing the Consumer Finance laws. *See also Baker v. Lanier Marine Liquidators, Inc.,* 187 N.C. App. 711, 716, 654 S.E.2d 41, 45 (2007) (noting North Carolina had a manifest interest in providing the plaintiff a convenient forum for redressing injuries inflicted by defendant out-of-state merchant); *McQuillan*, Order at p. 7 (denying motion to dismiss individual defendants in payday lending case). Mr. Reddam admits owning and heading both the CashCall company that funded and was immediately assigned all the loans, <u>and</u> the Delbert company that helped with collection efforts. He also admits engaging in contacts in

10

North Carolina with financial institutions and to directing employees at CashCall and Delbert on legal compliance issues.  It is fair to find there is jurisdiction.

Further, it is not necessary to pierce the corporate liability to assign liability to Reddam.  In fact, individuals who are directly involved in a payday lending business may be subject to personal jurisdiction and liability where they exerted control over the companies and were "directly and personally involved in the fraudulent scheme." *Gunnings*, 2007 WL 1931291, at *6 (W.D.N.C. July 2, 2007).  Notwithstanding the insulation against liability provided by the corporate form, "a director or other corporate agent can, of course, be held directly liable to an injured third party for a tort personally committed by the director or one in which he participated." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 554 S.E.2d 840 (2001) (quoting Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 14.08(a)).

Where an individual Defendant, such as Mr. Reddam, set up a business as a deliberate subterfuge to evade North Carolina consumer lending law, then he may be personally liable notwithstanding his corporate position. "An officer of a corporation who commits a tort is liable for it individually, even if he or she was acting for the corporation."  6 Strong's North Carolina Index 4th Corporations § 116.  "It has long been established that an officer of a corporation who commits a tort is individually liable for that tort, even though the officer may have acted on behalf of the corporation in committing the wrongful act." *Esteel Co. v. Goodman*, 82 N.C.App. 692, 697, 348 S.E.2d 153, 157 (1986); *Mills v. Mills*, 230 N.C. 286, 52 S.E.2d 915 (1949); *Records v. Tape Corp.*, 19 N.C.App. 207, 198 S.E.2d 452, *cert. denied*, 284 N.C. 255, 200 S.E.2d

11

653 (1973). A corporate officer's status as an employee does not insulate him from jurisdiction. *Saft America, Inc. v. Plainview Batteries, Inc.*, 363 N.C. 5, 673 S.E.2d 864 (2009) (reversing decision of the Court of Appeals, which had ruled that a corporate officer did not have sufficient minimum contacts with North Carolina); *Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 638, 652 S.E.2d 389, 394 (2007) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984) (corporate officers' "status as employees does not somehow insulate them from jurisdiction")); *Gunnings,* 2007 WL 1931291, *5 (noting that individual corporate owners of payday lending business "purposefully directed their activities at this state by establishing companies which, although incorporated elsewhere, operated exclusively within the state of North Carolina.").

In addition, Mr. Reddam through his actions put a product (internet loans) into the stream of commerce (through the website on North Carolina resident's computers and TV ads seen in North Carolina homes) which harmed individual borrowers in our State. Just as a product manufacturer can be subject to personal jurisdiction for putting a dangerous product into the stream of commerce, so too here for the internet loans. The delivery by defendants of unlawful payday loans into the State is similar to the delivery of products to the State. Purposeful availment has been found where a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). A foreign manufacturer cannot shield itself from liability for injuries caused by a product in the forum state where it has no direct contacts by funneling its products through a subsidiary. *Bush v. BASF Wyandotte Corp.*, 64 N.C.App. 41, 50, 306

12

S.E.2d 562, 568 (1983); *see also Warzynski v. Empire Comfort Systems*, 102 N.C.App. 222, 229, 401 S.E.2d 801, 805 (1991); *Tart v. Prescott's Pharmacies, Inc*., 118 N.C. App. 516, 456 S.E.2d 121 (1995). By analogy, the movant defendants herein should not be allowed to shield themselves from liability regarding their payday loan product.

Mr. Reddam admits to engaging in phone calls and emails with financial institutions in North Carolina. He does not deny in his Declaration that these communications had to do with the internet lending business. These facts support jurisdiction and Plaintiffs are also entitled to develop them further in discovery. *Compare Haizlip v. MFI of South Carolina, Inc.,* 159 N.C. App. 466, 583 S.E.2d 427 (2003) (telephone calls and mailings may support exercise of personal jurisdiction).

Mr. Reddam admits directing managers and supervisors at CashCall and Delbert regarding the loan business and specifically regarding compliance. Thus he must have been directly involved in the decisions a) to structure a subterfuge seeking to evade North Carolina law despite North Carolina's well-known reputation for barring payday loans; b) to concoct a "rent-a-tribe" scheme which did not even associate with a true tribal-owned entity; and c) to continue the loans in the face of consumer complaints and Attorney general cease-and-desist letters.

It was his CashCall and Delbert subordinates who sent the collection emails and made the collection calls to the Plaintiffs in North Carolina and received payments from Plaintiffs and their banks. *See Vishay Intertechnology, Inc. v. Delta Int'l Co.*, 696 F.2d 1062 (4th Cir. 1982) (defendant subject to jurisdiction when it had directed contacts into the forum). Physical presence in the State is not essential and a defendant can also be

13

subject to jurisdiction via letters, e-mails or phone calls with individuals in North Carolina related to the subject matter, or other activities aimed at North Carolina. Purposeful intentional activity directed to the State supports jurisdiction even if the defendant did not physically come into the State. *See Summit Lodging, LLC*, 176 N.C. App. 697, 702-03, 627 S.E.2d 259, 264 (2006). "It is well settled that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise." *Davis*, 120 N.C. App. 498, 501, 462 S.E.2d 832, 834 (1995) (citing cases).

Mr. Reddam has been named as a defendant or respondent in actions in other jurisdictions alleging unlawful conduct by his lending concerns. Just as he had minimum contacts in those jurisdictions, so too here. *See* SAC Ex. 4 (lists actions naming Reddam including in Florida, Maryland, New Hampshire, New York, Pennsylvania); Ex. 5 (New Hampshire cease and desist order naming *inter alia* Reddam). Most recently, the North Carolina Attorney General on December 16, 2013 filed an action against *inter alia* Mr. Reddam and alleging his participation in the usurious lending scheme. *See State of North Carolina ex rel. Cooper v. Western Sky Financial, LLC, et al.,* No. 13-CV-16487, Wake County Superior Court, Complaint ¶¶ 11, 17, 20-21 (**Exhibit 3**).

Mr. Reddam is therefore properly subject to the jurisdiction of this Court under the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4, and under the federal RICO laws, 18 U.S.C. § 1965(b). The exercise of personal jurisdiction is proper under the Due Process Clause and all other constitutional requirements.

## 2. __Defendant Payday Financial is Properly Subject to Jurisdiction__.

Payday Financial admits that it was the sole member of Western Sky Financial, through February 1, 2011. Two of the Plaintiffs, Melinda Long and Kevin Hayes, received Western Sky loans prior to that date. Because Payday Financial was the sole member of Western Sky when some of the loans were made and because it is known the companies shared employees and facilities, it is fair to hold it subject to jurisdiction.

Also, a parent or controlling company can be subject to personal jurisdiction where it made important decisions affecting individuals in the forum state. *See Davis v. Minnesota Mining and Manufacturing Co*., 590 N.W.2d 159 (Minn. Ct. App. 1999). In that case, the plaintiff worked for the in-state subsidiary, was hurt on the job and sued the out-of-state parent. The parent was not a Minnesota corporation, had no presence in Minnesota, and did not transact business in Minnesota except through its subsidiary. However the court found the parent "purposefully availed" itself and was subject to jurisdiction in Minnesota because it designed the overall safety program and "made important safety decisions affecting workers in Minnesota."  *Id.* at 162.

The parent corporation argued that the court would have to engage in a piercing-the-corporate-veil analysis to subject the parent to personal jurisdiction. The appellate court rejected that argument, noting that the actions of the parent itself were sufficient to support an exercise of personal jurisdiction, without regard to whether the actions of the subsidiaries should be attributed to the parent. This shows that a parent corporation may be subject to specific personal jurisdiction based on its involvement with its subsidiaries.

15

The fact that Payday Financial and other Western Sky entities had common owners and managers and used common facilities reflects that the defendants assisted each other and acted as each other's agents, further supporting jurisdiction. *See Bauer v. Douglas Aquatics, Inc.*, 698 S.E.2d 757, 2010 WL 3464533, *7 (N.C. App. Sept. 7, 2010) (noting that "contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction." (quoting *Nucor Corp. v. Bell*, 482 F. Supp.2d 714, 722 (D.S.C. 2007)).

As noted, the FTC case in the District of South Dakota brought out facts reflecting Payday Financial's involvement in the internet loan business and in unlawful collection activities. Ms. Lawrence's bald denial that the complaint herein involves Payday Financial loans (Lawrence Dec. ¶ 10) does not refute the evidence reflected in the FTC case that Payday Financial was involved in Western Sky loans and collections. (*See* SAC ¶ 168 & Ex. 16). Other courts have found that the sole member of an LLC may be subject to personal jurisdiction for its involvement. *See Taddeo v. American Invsco Corp.*, No. 2:08-CV-01463-KJD-RJJ, 2009 WL 2951118 (D. Nev. Sept. 8, 2009) (LLC manager subject to personal jurisdiction).

The facts alleged in the SAC also reflect how Defendants conspired and acted together to intentionally set up and market a loan scheme meant to try to evade North Carolina's ban on payday loans. Many courts have found that exercising personal jurisdiction over alleged co-conspirators does not offend traditional notions of justice and fair play. *See Gemini Enters., Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C. 1979) (connections between the conspiracy and the forum state can provide a

16

sufficient basis for a court to assert personal jurisdiction over nonresident coconspirator); *Verizon Online Servs., Inc. v. Ralsky*, 203 F.Supp.2d 601, 622 (E.D.Va. 2002) (co-conspirator may be subject to jurisdiction in a forum where substantial acts in furtherance of the conspiracy were performed by other members of the conspiracy); *America Online, Inc. v. Ambro Enters.*, No. 04-1498, 2005 WL 2218433, at *3 n. 1 (E.D.Va. Sept. 8, 2005) (same); *Noble Sec., Inc. v. MIZ Engineering, Ltd.,* 611 F. Supp. 2d at 539-40 (co-conspirators may be agents of each other).

Here, many of the pertinent Complaint allegations are unrefuted and the evidence developed in the FTC action may be noted by this Court, and Plaintiffs should be allowed to proceed with their claim against Payday Financial.

### 3.    In the Alternative, the Court Should Allow Discovery.

Normally when a district court considers a Rule 12(b)(2) motion on the basis of papers alone without conducting an evidentiary hearing or without deferring ruling pending receipt of evidence, the plaintiff must only prove a *prima facie* case of personal jurisdiction. *Noble Sec., Inc. v. MIZ Eng'g, Ltd*., 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (so stating); *In re Celotex Corp*., 124 F.3d 619, 628 (4th Cir. 1997); *Brooks v. Motsenbocker Advanced Devs., Inc*., 242 Fed. Appx. 889 (4th Cir. 2007) (unpub. per curiam). In this case, there has been no discovery and so Plaintiffs are entitled to this lenient standard. In the alternative, Plaintiffs request leave to engage in discovery on personal jurisdiction issues. It is clear that in the appropriate case the Court may allow discovery to clarify preliminary jurisdictional issues.

17

The standard for deciding a motion based on Rule 12(b)(2) was set forth in *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), where the court explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling until it receives evidence at trial. *Id.*

In considering a motion to dismiss for lack of personal jurisdiction, a court may either evaluate the motion on the basis of the pleadings and affidavits, postpone the decision and allow discovery on the issue, or hold an evidentiary hearing. *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 524 (E.D. Va. 2009) (noting "the parties were permitted to conduct limited discovery regarding personal jurisdiction"); *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981); *Iannucci v. Alstate Process Service, Inc.,* 2006 WL 2792228, *2 (W.D.N.C. 2006) (same); *Hansen v. Neumueller,* 163 F.R.D. 471, 473 (D. Del. 1995) (permitting liberal discovery of any facts which are relevant, including jurisdictional facts); *Powerstation LLC v. Sorensen Research & Dev. Trust*, No. 6:07-4167, 2008 WL 5431165, at *2 (D.S.C. Dec. 31, 2008) (granting a motion for jurisdictional discovery); *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1074 (8th Cir. 2004) (noting the court's discretion in allowing jurisdictional discovery).

Treatises likewise state that where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues. The scope of *in personam* jurisdiction over a defendant is a proper subject of discovery. Where a defendant files a motion to dismiss for lack of personal jurisdiction, a plaintiff generally

may obtain a limited amount of discovery with respect to the question of jurisdiction. 10 Fed. Proc., L. Ed. § 26:84.

Discovery is permitted into facts relevant to the issues of jurisdiction and venue, including jurisdiction over the person. 23 Am. Jur. 2d Depositions and Discovery § 31. A Federal District Court has the inherent and legitimate authority to issue orders of discovery as necessary for the court to determine and rule upon its own jurisdiction. When a defendant moves to dismiss for lack of jurisdiction, either party should be permitted to take a deposition on the issue of fact raised by the motion. *Id. See also* 4 Wright & Miller, Federal Practice and Procedure § 1067.6 (3d ed. 2002) (federal district courts may require defendants to respond to discovery requests relevant to a Rule 12(b)(2) motion to dismiss); 10 Fed. Proc., L. Ed. § 26:120 ("A court is vested with broad discretion in determining whether discovery should be allowed on the issue of whether personal jurisdiction exists in an action."); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2006) (limited discovery would shed light on whether the exercise of personal jurisdiction is appropriate); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 792 (6th Cir. 1996) (district court allowed limited jurisdictional discovery).

Accordingly the law is clear this Court may allow limited discovery on jurisdictional issues. Such would be appropriate here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction. Alternatively, the Plaintiffs respectfully request that the Court allow discovery.

19

This the 6th day of March, 2014.

/s/ John S. Hughes
Aaron F. Goss (N.C. Bar No. 40251)
John S. Hughes (N.C. Bar No. 22126)
Mona L. Wallace (N.C. Bar No. 09021)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
agoss@wallacegraham.com
jhughes@wallacegraham.com
mwallace@wallacegraham.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS PAYDAY FINANCIAL, LLC AND JOHN PAUL REDDAM'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF, which will send notification of such filing to the following:

Hayden J. Silver III
Raymond M. Bennett
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Phone: (919) 755-2188
Fax: (919) 755-6099

Brian J. Fischer
Katya Jestin
Neil M. Barofsky
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1629
Facsimile: (212) 891-1699

*Attorneys for Defendants*

This the 6th day of March, 2014.

/s/ John S. Hughes
Aaron F. Goss (N.C. Bar No. 40251)
John S. Hughes (N.C. Bar No. 22126)
Mona L. Wallace (N.C. Bar No. 09021)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
agoss@wallacegraham.com
jhughes@wallacegraham.com
mwallace@wallacegraham.com

21

**EXHIBITS**

1.      D.S.D. Case No. 3:11-cv-03017-RAL, filing dated Jan. 31, 2013.

2.      Unreported cases.

3.      *State of North Carolina ex rel. Cooper v. Western Sky Financial, LLC, et al.*

4.      Proposed order.