IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NUMBER 1:13-CV-00255-WO-JLW

| | |
|---|---|
| THOMAS BROWN, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WESTERN SKY FINANCIAL, LLC, | ) |
|     *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION REQUESTING DISCOVERY ON PRELIMINARY ISSUES**

Plaintiffs submit their brief in support of their motion pursuant to Fed. R. Civ. P. 26 requesting that the Court allow discovery on issues relevant to the determination of the Defendants' pending motions (Docket Nos. 91 & 93).

This motion is filed in the alternative to the Plaintiffs' request that the Court deny the Defendants' motions outright as expressed in Plaintiffs' briefs opposing those motions. If the Court finds that those motions should not be denied outright at this time, then the Plaintiffs respectfully contend that they have put forth sufficient facts and *prima facie* claims to justify allowing discovery on issues that would be relevant to inform the Court's ultimate disposition of the motions.

**I.**     **NATURE OF THE MATTER BEFORE THE COURT.**

The Second Amended Complaint ("SAC") was filed on January 23, 2014. (Docket 89). Plaintiffs are North Carolina residents who allege they saw advertisements on television for Western Sky, and applied by phone and over the internet for and

1

received high-interest consumer "payday" loans.  They allege that Defendant CashCall, Inc. operated Western Sky as a subterfuge in order to make it appear that the loans were protected from state law by Tribal sovereign immunity.  Plaintiffs allege claims under the North Carolina Consumer Finance Act and other state and federal law claims, both individually and on behalf of a putative class.

Defendants have not yet answered the SAC.  Rather, Defendants have filed a motion to dismiss the SAC contending that under a forum selection clause in the loan agreement, the claims can only be brought under the exclusive jurisdiction of the Tribal Court of the Cheyenne River Sioux Tribe located in South Dakota.  (Docket 93). Plaintiffs in opposing the motion contend that a) the parties cannot confer subject matter jurisdiction on a court by consent; b) the Tribal Court on the Reservation in South Dakota lacks subject matter jurisdiction over these claims; and c) the forum selection clause is also unenforceable because it is unreasonable and violates the North Carolina public policy and statutes controlling small consumer loans made to North Carolina residents.

Defendants also contend that the Court must dismiss the case because the Plaintiffs must first exhaust Tribal remedies.  Plaintiffs, opposing the motion, state that because the Tribe lacks jurisdiction there are no remedies to exhaust, and that exhaustion is a prudential doctrine that the Court should not apply on the facts herein.

Defendants have also moved to dismiss or stay the case arguing that under an arbitration agreement any claims must be arbitrated.  The Plaintiffs contend this motion fails because the arbitration agreement is unenforceable on a variety of grounds and note

2

that Federal District Courts in Florida and Illinois have found similar Western Sky arbitration provisions unenforceable.

Defendants also have moved to dismiss all claims against two of the Defendants, Payday Financial, LLC, and John Paul Reddam, asserting that neither has minimum contacts sufficient to allow this Court to exercise personal jurisdiction. (Docket 91). Plaintiffs in opposing the motion contend that Payday Financial was for a period time the sole member of Western Sky Financial, LLC, and was involved in the loan program. They also contend that Mr. Reddam signed key agreements contemplating performance of the loan program in North Carolina and was actively involved in the loan business which was set up as a deliberate subterfuge.

In the SAC, the Plaintiffs have pled various facts obtained from the public record filings available from certain other private plaintiff and government agency enforcement actions and proceedings. The pleadings in various of those actions brought against CashCall, Western Sky and related defendants in other jurisdictions reflect that there was discovery and production of documents and information in several of those actions. For example, it was agency proceedings against CashCall and other Western Sky entities in other states that led to the production of the contractual agreements between CashCall and Western Sky that are attached as SAC Ex. 6 and appear to show a great deal of control by the former entity over the latter and reveal other terms of the lending program. However there has been no discovery to date in the instant case.

## II. QUESTION PRESENTED.

Should the Court allow discovery on issues raised by the Defendants' motions?

3

### III. ARGUMENT.

It is within this Court's discretion to allow discovery on issues raised by the Defendants' pending motions. Should the Court not see fit to deny the motions outright at this time, the Court should hold them in abeyance (or dismiss them without prejudice) and allow discovery.

Because this is a putative class action, the Court's ultimate disposition of the venue and arbitration issues as a practical matter may impact numerous consumers. The facts and circumstances brought to the Court's attention to date provide an adequate basis to support the request for discovery. Furthermore, the actions that have been brought in other jurisdictions against various CashCall/Western Sky entities and in which discovery and information production occurred, reflect that facts and evidence exist which may inform the issues raised by the pending motions.

Plaintiffs have adduced facts which they believe suffice to allow denial of Defendants' pending motions. However, should the Court not so conclude, then Plaintiffs show that clearly at a minimum, they have raised *prima facie* questions about issues including: 1) the reasonability and enforceability of Defendants' contractual provision specifying Tribal Court venue and choice of law, 2) the enforceability of the arbitration clause, and 3) personal jurisdiction over Reddam and Payday Financial. Specifically:

- Plaintiffs have cited multiple decisions from state agency proceedings involving Western Sky or CashCall in which there was production of documents and information from defendants. Findings were made that Tribal law, Tribal jurisdiction or Tribal immunity did not apply, and/or that the purported Tribal nature of Western Sky was a sham and a subterfuge. The Western Sky website

4

and loan terms and marketing and collection practices appear to have been uniform across various states, and all based off the same internet web site. It is reasonable to conclude that discovery is likely to reveal similar information regarding the loan program in North Carolina. Plaintiffs are entitled to seek discovery of the same kinds of documents and information produced in those other actions.

- Unlike a "run of the mill" forum selection clause, in this matter there is *prima facie* evidence that the purportedly "Tribal" loans actually did not have a real connection with the relevant Tribe (the Cheyenne River Sioux Tribe) to justify Tribal jurisdiction or applicability of a Tribal forum or law. Discovery of the facts regarding the Western Sky and CashCall relationship and operations would shed light on this issue.

- Plaintiffs have cited decisions and evidence showing that CashCall was the actual lender and Western Sky was merely a "front" in order to mislead consumers and regulators that the Tribe was associated with the loans. Plaintiffs are entitled to challenge the venue and arbitration clauses for deceptiveness and under contract defenses such as impossibility, mistake and unconscionability as well as failure to form an enforceable agreement. The forum and arbitration clauses are closely interwoven with the deceptive Tribal representations in the overall loan agreement. Plaintiffs are entitled to discovery into these issues herein.

- Plaintiffs have cited decisions finding that one or more of the Defendants have misused the purported Tribal forum and the arbitration process against consumers. It is not reasonable to enforce the Tribal venue or arbitration clauses given this evidence and discovery would further help develop the record. In the *Inetianbor* matter, an abortive arbitration was actually conducted, leading to the disclosure of facts reflecting the sham nature of the arbitration process. *See Inetianbor v. CashCall, Inc.*, No. 0:13-60066-CIV, 2013 WL 4494125 (S.D. Fla. Aug. 19, 2013); *see also Jackson v. Payday Fin., LLC*, No. 11 C 9288, slip op. (N.D. Ill. Aug. 28, 2013) (**Exhibit 1**). Plaintiffs are entitled to discovery on the issue.

A. **Information from Other Relevant Proceedings Supports Discovery.**

Other proceedings have involved the production of information and documents from one or more of the companies associated with the Western Sky loan program. This discovery in these other proceedings led to findings and conclusions that are relevant to the issues in the subject case. These other proceedings tend to show that discovery would

5

provide useful and probative information on issues going to the issues raised by the Defendants in their pending motions. Other proceedings include:

1. *In the Matter of Cashcall, Inc.*, No. 2012-NRR-2003-0154, "Ruling on Whether Loans at Issue are Subject to Iowa Law," Iowa Dep't of Inspections and Appeals, Division of Administrative Hearings, Sept. 26, 2013, at pp. 2-11 (rejecting the claim that tribal law applied, noting CashCall control over the loans, "the Iowa consumers who entered into loan agreements with Western Sky did not enter into a business relationship either with the Tribe or a member of the Tribe") (SAC Ex. 19);

2. *Maryland Commissioner of Financial Regulation v. Western Sky Financial, LLC,* no. CFR-FY-2011-182, order dated Feb. 15, 2011, p. 13 (finding that "the Respondents themselves are not entitled to the Cheyenne River Sioux's tribal sovereign immunity" and noting a "lack of relationship between the Cheyenne River Sioux Tribe and Respondents") (SAC Ex. 20);

3. *Maryland Commissioner of Financial Regulation v. Western Sky Financial, LLC et al.*, case no. CFR-FY2011-182, Order dated May 22, 2013, pp. 8-13 (rejecting argument that Tribal law applied, finding that "[t]he fact that his businesses have a physical location on the Reservation is purely incidental to the type of business they transact" and that loans were "directed at non-Indians across the country, while specifically avoiding offering loans to Indians on the same reservation") (SAC Ex. 13);

4. *State of Missouri ex rel. Chris Koster, Attorney General v. Martin A. Webb, aka Butch Webb, et al.*, no. 4:11-cv-01237-AGFl, E.D. Missouri, order dated March 27, 2012, pp. 3-4, 8-9 (rejecting tribal immunity argument, rejecting argument that "the forum selection clauses on the loan agreements preclude state-law regulation") (SAC Ex. 22);

5. *State of Missouri ex rel. Chris Koster, Attorney General v. Martin A. Webb, aka Butch Webb, et al.*, case no. 11SL-CC01680-1, St. Louis County Circuit Court, Order dated Oct. 15, 2012 (defendants not entitled to tribal immunity) (SAC Ex. 23);

6. *In re CashCall, Inc.*, No. 2011-DFI-0041, State of Washington Office of Administrative Hearings, Order dated Jan. 30, 2013, ¶¶ 2.1, 5.15 (Indian law did not insulate CashCall from liability) (SAC Ex. 24);

7. *State of Colorado ex rel. John W. Suthers, Attorney General v. Western Sky Financial*, 845 F.Supp.2d 1178, 1181 (D. Colo. 2011) (rejecting preemption by tribal law);

8. *State of Colorado ex rel. John W. Suthers, Attorney General v. Western Sky Financial*, case no. 11-cv-638, District Court, Denver County, Colorado, Order dated April 17, 2012, pp. 7-11 (rejecting argument of tribal immunity, finding that Western Sky contract's choice-of-forum clause did not require a different result, citing authority holding that a choice-of-forum clause may be invalidated where it conflicts with a state public policy, and finding that complaint "implicates neither tribes nor on-reservation activity") (SAC Ex. 17); and

9. *State of Colorado ex rel. John W. Suthers, Attorney General v. Western Sky Financial*, case no. 11-cv-638, District Court, Denver County, Colorado, Order dated April 15, 2013, at pp. 6-8, 11-12 (finding that "because Defendants' business activities are conducted off-reservation and because Defendants solicit and advertise their business in Colorado and have, in fact, entered into loan agreements with Colorado citizens, Defendants are not entitled to tribal immunity or federal preemption") (SAC Ex. 18).

In several of these cases, the authorities bringing the action had the benefit of discovery. Plaintiffs are entitled to similar discovery. The findings by these other tribunals reflect that it is likely discovery will produce evidence showing the venue and arbitration clauses are unenforceable and sham provisions. Plaintiffs believe discovery will also reinforce the evidence that Western Sky is not owned or controlled by the Tribe.

Decisions and evidence located to date show that CashCall was the actual lender and controlled Western Sky which was merely used as a "front" to mislead consumers and regulators that the Tribe was associated with the loans. CashCall has no right to enforce a venue clause purporting to locate jurisdiction in the Tribal Court and an arbitration clause locating arbitration with the Tribe and purporting to state that Tribal law and rules will apply given this set of facts. Plaintiffs specifically attack not just the

7

whole loan agreement, but the arbitration and venue clauses themselves, on this basis. Plaintiffs are entitled to discovery on this issue.

When the New Hampshire Department of Banking found that Western Sky was a "front" used by CashCall, it had the benefit of discovery pursuant to an administrative subpoena. *See In re CashCall, Inc., John Paul Reddam, President and CEO of CashCall, Inc., and WS Funding LLC*, Case No. 12-308, Cease and Desist Order by the State of New Hampshire Banking Dep't, June 4, 2013, pp. 2-3 (SAC Ex. 5). The Department found based on that discovery that "Western Sky is nothing more than a front to allow CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators." *Id.* at p. 10. If CashCall has been using Western Sky as a "front" in this way, it should not be allowed to require this Court to enforce the venue and arbitration provisions in its agreements. This is especially so when those provisions are inextricably intertwined with the deceptive representations that the business was Tribal-affiliated, that Tribal law controlled, that the Tribe had jurisdiction and that the Tribe conducted arbitration.

The New Hampshire order went into detail concerning the relationship between CashCall and Western Sky whereby the former dominated the latter. *Id.* at pp. 3-5. CashCall provided website hosting and support services and reimbursed for costs associated with the server; reimbursed Western Sky for office and personnel costs; and provided a telephone number and marketing. *Id.* at p. 3. CashCall reviewed loan applications for underwriting requirements. The loans were funded from a "reserve

8

account" funded by CashCall. Only CashCall accepted loan payments from borrowers. *Id.* at pp. 3-4. The order further found that "respondents have taken substantial steps to conceal this business scheme from consumers…." *Id.* at p. 5. The venue clause in the loan contract was cited as an example of this concealment. *Id.* The order found good cause to believe that CashCall or its subsidiary WS Funding was the actual *de facto* lender. *Id.* at pp. 6-7. The business scheme was unfair and deceptive in preventing consumers from understanding what entity was really making the loans. *Id.* at p. 7.

The Minnesota Attorney General had the benefit of discovery when it reached similar findings. *State of Minnesota v. CashCall, Inc., et al.,* No. 27-CV-13-12740, Hennepin County District Court, Order dated Sept. 6, 2013, pp. 3-5, 17-19 (noting CashCall control over Western Sky loans, finding that Western Sky loan contract and advertising had a tendency to deceive consumers that the business was Tribal-owned or tribal-sponsored and that "[a]ccording to the factual record as it currently exists, these materials did lead Minnesota consumers to actually believe that Western Sky belonged to the tribe itself" and finding that Tribal affiliation language was "deliberately used" and had a tendency to deceive consumers") (SAC Ex. 21).

Whether Defendants have previously misused the Tribal Court forum to threaten consumers with unlawful garnishments or misused arbitration provisions to pursue borrowers in past matters is relevant to the issue of whether this Court should enforce the clauses. The arbitration provision purports to be a dispute resolution procedure outside of court. In the past CashCall has misused dispute resolution procedures against consumers. In 2009, the California Attorney General alleged that CashCall used illegal and abusive

9

dispute resolution practices including excessive and verbally abusive phone calls at all hours, threatening to call the police and garnish wages without a basis to do so, and other tactics. *See The People of the State of California v. CashCall, Inc.,* No. BC420115, Complaint dated August 18, 2009 and "Final Judgment and Permanent Injunction," dated August 24, 2009 (SAC Ex. 25).

In Maryland, Western Sky used abusive dispute resolution practices which include contacting consumers' employers and telling them it had the right to garnish wages, even though this was false, and continuing to try to collect on loans after cease and desist orders were entered. *Maryland Commissioner of Financial Regulation v. Western Sky Financial, LLC et al.*, case no. CFR-FY2011-182, Opinion and Final Order dated May 22, 2013 (SAC Ex. 13).

In Massachusetts, CashCall has misused the dispute resolution process by setting up an ostensibly separate debt collection company, Delbert, which was "conducting its business in an unsafe and unsound manner." *In re CashCall, Inc. and WS Funding, LLC,* Docket No. 2013-010, Massachusetts Commissioner of Banks, "Cease Order" dated March 21, 2013, ¶ 32. (SAC Ex. 14).

In West Virginia, after extensive discovery and a bench trial a Judge found that CashCall had abused arbitration clauses to threaten consumers. *West Virginia v. CashCall, Inc.*, Case No. 08-C-1964, Trial Court Order #1 dated Sept. 10, 2012, ¶¶ 22 ("threats of arbitration"), 36 (CashCall called witness and said arbitration clause meant it could take her house and car), 60 (threats of arbitration), 62 (false threats), 64 (262 letters threatening arbitration), 66 (threats of arbitration as a collection tactic)). (SAC Ex. 15).

After the FTC sued Western Sky alleging they were sending false garnishment papers, Western Sky was ordered to stop the conduct. *See* Stipulated Preliminary Injunction, in *Federal Trade Commission v. Payday Financial, LLC*, Case 3:11-cv-03017-RAL, filed Sept. 7, 2011 (D.S.D.) (SAC Ex. 16). In a subsequent order filed September 30, 2013, the court found that Payday Financial had made payday loans throughout the United States, had filed collection actions in the Tribal Court against borrowers and used wage garnishment packets between 2009-2011. *Id.*, pp. 4-5, 19. The court granted partial summary judgment on the FTC's claim that the garnishment forms were unlawful, and found deceptive representations in the garnishment papers. *Id.*, pp. 22-24. (SAC Ex. 16). The summary judgment filings reflect that considerable discovery occurred.

Mr. Inetianbor's case reflects an actual arbitration proceeding begun under the Western Sky arbitration clause and vividly shows the unfairness of the process and provides an additional *prima facie* basis for discovery:

A. Defendants approached Tribal member Mr. Robert Chasing Hawk to be the arbitrator. Mr. Inetianbor never agreed for Mr. Chasing Hawk to be the arbitrator.

B. Mr. Inetianbor asked CashCall how much they were paying Mr. Chasing Hawk to be the arbitrator. They would not tell him. They also would not send him a copy of the contract they had with Mr. Chasing Hawk.

C. Mr. Inetianbor found out that Mr. Chasing Hawk's daughter worked for Western Sky. Mr. Chasing Hawk had previously said in a May 1, 2013 letter that he had no prior connection to the parties.

D. The May 1 letter was ghostwritten for Mr. Chasing Hawk to pretend was his own. Mr. Chasing Hawk has admitted that Tawny Lawrence wrote the letter. Ms. Lawrence works for Western Sky as a manager. CashCall's in-house counsel was copied on the letter.

11

E. Neither CashCall nor Mr. Chasing Hawk provided Mr. Inetianbor with any rules governing his arbitration. Mr. Inetianbor's loan agreement says the tribe's "consumer dispute rules" apply. There are no such rules.

F. Mr. Inetianbor sued CashCall for false information on his credit report. However, the demand CashCall sent to the arbitrator claimed that he still owed CashCall money. CashCall did not inform Mr. Inetianbor or the arbitrator that the loan was illegal and void. The amount of money the company sent Mr. Inetianbor for the loan came to $2,525.00 (loan amount of $2,600 minus "fee" of $75). By December 2011, Mr. Inetianbor had paid back $3,252.65 on the loan. Yet the company tried to claim more money in the abortive arbitration, despite the underlying loan being void.

G. A "preliminary hearing" in Mr. Inetianbor's arbitration occurred by telephone on Friday, June 21, 2013. The transcript of this hearing raises numerous concerns regarding the proceedings.

*See* SAC ¶ 170. The Trial Court found the arbitration clause was void. *Inetianbor v. CashCall, Inc.*, No. 0:13-60066-CIV, 2013 WL 4494125 (S.D. Fla. Aug. 19, 2013). There is already a demonstrated record of unfair use of the Tribal forum and arbitration. Plaintiffs have demonstrated a *prima facie* basis for discovery.

Another relevant issue is whether the Tribe has "consumer dispute rules," and why Defendants inserted such a clause when in fact the Tribe never had such rules. Ms. Johnson's contract represents that the Tribe's "consumer dispute rules" (SAC Ex. 2, p. 3) also known as the "Tribal Nation's consumer rules" (*Id.*, p. 4) will govern. Thomas Brown's loan agreement contains similar language, see SAC Ex. 1, p. 3.

Plaintiffs have not found any such rules and two courts have found they do not exist and the clause is a sham. *Inetianbor*, No. 0:13-60066-CIV, 2013 WL 4494125 (S.D. Fla. Aug. 19, 2013); *Jackson*, No. 11 C 9288, slip op. (N.D. Ill. Aug. 28, 2013). Plaintiffs are entitled to discovery on the issue. Plaintiffs are also entitled to discovery

12

on the circumstances behind the drafting of the arbitration provisions and whether the Defendants sought to deliberately mislead consumers or acted with reckless indifference. A defendant should not be allowed to depend on an arbitration clause containing provisions it knew to be false and misleading.

The arbitration agreements represent and promise that the Tribe will conduct the arbitration, however the Tribe does not conduct arbitration. The existence of any arbitration mechanism, or lack thereof, is relevant. If the Tribe does not have an arbitration mechanism, this tends to show the representations in the contract are misleading. To the extent the Court deems the record unclear, discovery should be allowed.

### B. The Law Allows Discovery on Issues Raised in Defendants' Motions.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim," and this standard has been liberally construed. Plaintiffs expressly claim the arbitration and venue clauses are unfair, deceptive, unreasonable and unenforceable. (SAC, First Claim for Relief).

Discovery is appropriate given that the Court analyzes arbitration issues under a summary judgment standard. *See Wen-Chouh Lin v. Brodhead,* No. 1:09CV882, 2012 WL 4793710, at *2 (M.D.N.C. Oct. 9, 2012) ("[T]he Court should compel arbitration 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56)); *Minter v. Freeway Food, Inc.*, No. 1:03CV00882, 2004 WL 735047 (M.D.N.C. March 3, 2004)

13

(noting that a "summary judgment standard will be applied on this issue of whether an arbitration agreement was ever formed").[1]

The limited record currently available reflects the existence of significant factual issues regarding whether the parties entered into an enforceable arbitration agreement, whether representations in the agreement are false and misleading, and whether it is unconscionable. There are also factual issues regarding the fairness and reasonability of the venue clause. Because of these factual issues, Plaintiffs are entitled to an evidentiary hearing or even a trial regarding the arbitration agreement and it is sensible to allow discovery in advance. *See Minter*, *supra* ("It is clear that when a question of fact arises as to the presence of an agreement to arbitrate, the issue may not be determined on the affidavits; rather a trial, either bench or jury, is required.").[2]

In *Wen-Chouh Lin,* this Court indicated that a summary judgment-style standard applies to an arbitration dispute. Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting that there is a dispute of material fact must support that assertion by "citing to particular parts

---

[1] Under Rule 56(d), if a nonmovant shows that it cannot present facts essential to oppose a summary judgment motion, the court may defer considering the motion and allow time to take discovery. Here, by analogy to Rule 56(d), it is appropriate to stay the determination of the Defendants' motions in order to allow discovery that will inform key issues. Without discovery, Plaintiffs are prejudiced in their ability to present facts relevant to the motions. Defendants have not yet filed an Answer. Accordingly, it is not known what Defendants' position is as to many of the detailed allegations in the SAC.

[2] Plaintiff demanded a trial by jury. Doc. 1, p. 40. Under Fed. R. Civ. P. 38(c), Plaintiffs are "considered to have demanded a jury trial on all the issues so triable."

of … the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[3]

Allowing discovery in appropriate cases follows from the Federal Arbitration Act itself, which contemplates only that an arbitration agreement shall summarily be enforced if its making and its terms are "not in issue." *See* 9 U.S.C. § 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement…. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith <u>is not in issue</u>, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement…. <u>If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof</u>….

9 U.S.C. § 4 (emphasis added). Here, the making of the agreement and failure to comply <u>are</u> at issue, because Plaintiffs have advanced facts showing how the agreement cannot be performed and they have good grounds for noncompliance. Plaintiffs are entitled to discovery and should this Court find it appropriate, even a "trial" on these issues.

In other cases involving similar issues courts have allowed discovery and considered information developed in the evidentiary record. Just as those courts found

---

[3] In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Courts must give the parties "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

15

Case 1:13-cv-00255-WO-JLW   Document 99   Filed 03/06/14   Page 15 of 19

that discovery was appropriate, so to should this Court. *See Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 939-40 (4th Cir. 1999) (noting testimony by representatives of AAA, National Academy of Arbitrators and others); *Capps v. Blondeau*, 719 S.E.2d 256 (N.C. Ct. App. 2011) ("On 2 May 2008, Judge Jolly entered an order allowing limited discovery on the existence of an agreement to arbitrate, and whether any such agreement was unconscionable."); *Southeastern Paper Group, Inc. v. Sunburst Chemicals, Inc*., 11 CVS 8690, 2012 NCBC 15, at ¶ 34 (N.C. Business Court March 13, 2012) (allowing discovery on issues regarding arbitration agreement); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983) (in appropriate cases, opponent of agreement to arbitrate "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity" of the agreement); *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra,* 198 F.3d 473, 482 (4th Cir. 1999) (court may order discovery on matters relevant to the existence of an arbitration agreement); *Champ v. Siegel Trading Co., Inc*., 55 F.3d 269, 276 (7th Cir. 1995) ("[I]n a proceeding under section 4, which consists of a preliminary determination on whether the parties' intended an issue to be referred to arbitration, a district court could order discovery pursuant to Fed.R.Civ.P. 26 on matters relevant to the existence of an arbitration agreement."); *Parilla v. IAP Worldwide Servs., V.I., Inc*., 368 F.3d 269, 284 (3rd Cir. 2004) (allowing discovery on issue of whether an arbitration clause is unconscionable); *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 511 (7th Cir. 2003) (limited discovery on the arbitration agreement); *Hicks v. Citigroup Inc*., No. C11-1984-JCC, 2012 WL 254254 (W.D. Wash. Jan. 26, 2012) (limited discovery related to

arbitration agreement); *Hesse v. Sprint Spectrum, L.P.*, No. C06-0592 JLR, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012) (limited discovery, arbitration).

## IV. **CONCLUSION.**

If the Court does not agree with Plaintiffs that Defendants' motions may be denied outright, then the Court should alternatively allow discovery on pertinent issues before deciding the motions. *See Powerstation,* 2008 WL 5431165, at *2 ("Upon the completion of jurisdictional discovery, the parties may refile any motions concerning this court's personal jurisdiction over the Defendant or lack thereof."). A proposed order is attached as **Exhibit 1.**

Respectfully submitted, this the 6th day of March, 2014.

/s/ John S. Hughes
Aaron F. Goss (N.C. Bar No. 40251)
John S. Hughes (N.C. Bar No. 22126)
Mona L. Wallace (N.C. Bar No. 09021)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
agoss@wallacegraham.com
jhughes@wallacegraham.com
mwallace@wallacegraham.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2014, I electronically filed the foregoing PLAINTIFFS' BRIEF IN SUPPORT OF MOTION REQUESTING DISCOVERY ON PRELIMINARY ISSUES with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

This the 6th day of March, 2014.

/s/ John S. Hughes
Aaron F. Goss (N.C. Bar No. 40251)
John S. Hughes (N.C. Bar No. 22126)
Mona L. Wallace (N.C. Bar No. 09021)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
agoss@wallacegraham.com
jhughes@wallacegraham.com
mwallace@wallacegraham.com

**LIST OF EXHIBITS**

1. Unreported cases.
2. Proposed order.