IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS BROWN, MONICA JOHNSON,    )
MELINDA LONG, RENEE HOLMES,      )
KEVIN HAYES, LESLIE JAN LYDON,   )
and ELIZABETH JACKSON, on        )
behalf of themselves and a       )
class of persons similarly       )
situated,                        )
                                 )
              Plaintiffs,         )
                                 )
     v.                          )              1:13CV255
                                 )
WESTERN SKY FINANCIAL, LLC,      )
PAYDAY FINANCIAL, LLC,           )
CASHCALL, INC., JOHN PAUL        )
REDDAM, WS FUNDING, LLC, and     )
DELBERT SERVICES CORPORATION,    )
                                 )
              Defendants.         )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiffs Thomas Brown and Monica Johnson initially filed

this lawsuit on March 28, 2013, against Defendants Western Sky

Financial, LLC; 24 Seven Solution, LLC; 24-7 Cash Direct, LLC;

Advance Wireless, LLC; Dekake Ranch, LLC; Financial Solutions,

LLC; Great Plains Lending, LLC; Great Sky Finance, LLC; Green

Billow, LLC; High Country Ventures, LLC; Horizons Consulting,

LLC; Interim Holding Company; Management Systems, LLC; Native

Imagination, LLC; New Holding Company; Payday Financial, LLC;

Red River Ventures, LLC; Red Stone Financial, LLC; Webb Ranch,

LLC; Western Capital, LLC; Western Sky Dakota Holding Company; Martin A. Webb; and CashCall, Inc. (Complaint (Doc. 1).)

On August 13, 2013, Plaintiffs Brown and Johnson filed their First Amended Complaint, removing Defendant Western Sky Dakota Holding Company as a Defendant and adding Defendants John Paul Reddam, WS Funding, LLC, and Delbert Services Corporation. (First. Am. Complaint (Doc. 47).)[1]

Pursuant to a stipulated order (Doc. 88), Plaintiffs Brown and Johnson, joined by Plaintiffs Melinda Long, Renee Holmes, Kevin Hayes, Leslie Jan Lydon, and Elizabeth Jackson, (collectively "Plaintiffs") filed their Second Amended Complaint on January 23, 2014, against Defendants Western Sky Financial, LLC ("Western Sky"); Payday Financial, LLC ("Payday"); CashCall, Inc. ("CashCall"); John Paul Reddam ("Reddam"); WS Funding, LLC ("WS Funding"); and Delbert Services Corporation ("Delbert").[2] (Doc. 89.) On February 10, 2014, Defendants Payday and Reddam

---

[1] On November 15, 2013, Plaintiffs filed a notice dismissing their claims against Defendants 24 Seven Solution, LLC; 24-7 Cash Direct, LLC; Advance Wireless, LLC; Dekake Ranch, LLC; Financial Solutions, LLC; Great Plains Lending, LLC; Great Sky Finance, LLC; Green Billow, LLC; High Country Ventures, LLC; Horizons Consulting, LLC; Interim Holding Company; Management Systems, LLC; Native Imagination, LLC; New Holding Company; Red River Ventures, LLC; Red Stone Financial, LLC; Webb Ranch, LLC; Western Capital, LLC; and Martin A. Webb. (Doc. 71.)

[2] Unless otherwise specified, all references to Plaintiffs' "Complaint" will refer to Plaintiffs' Second Amended Complaint (Doc. 89).

filed their Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 91) and all Defendants filed their Omnibus Motion to Dismiss (Doc. 93).

Presently, there are four pending motions before the court: (1) Motion to Dismiss for Lack of Jurisdiction by Defendants Payday and Reddam (Doc. 91); (2) all Defendants' Omnibus Motion to Dismiss ("Omnibus Motion") (Doc. 93); Plaintiffs' Motion Requesting Discovery on Preliminary Issues (Doc. 98); and (4) Defendants' Cross-Motion to Stay Discovery (Doc. 104).

In order to rule on the pending motions, this court must first address the forum selection clauses included in all of Plaintiffs' loan agreements. This is a threshold issue, because it determines proper venue for the current action. Variations of the forum selection clauses, granting almost exclusive jurisdiction to the Cheyenne River Sioux Tribe ("CRST"), have been the subject of litigation throughout the United States. Analysis of this litigation suggests that courts have addressed the forum selection clause in three ways: (1) the forum selection clause has been found unenforceable;[3] (2) the forum

---

[3] See, e.g., Inetianbor v. CashCall, Inc., 768 F.3d 1346 (11th Cir. 2014), petition for cert. filed, 83 U.S.L.W. 492 (U.S. Dec. 14, 2014) (No. 14-775); and Jackson v. Payday Fin., LLC, 764 F.3d 765 (7th Cir. 2014).

selection clause has been enforced;[4] or (3) the CRST has been
provided an initial opportunity to determine the enforceability
of the forum selection clause using the tribal exhaustion
doctrine.[5]

For the reasons described in detail in this Memorandum
Opinion and in order to ensure that this matter is before the
proper tribunal, this court finds most persuasive the cases
holding tribal court exhaustion appropriate on the threshold
issue of tribal court jurisdiction. Therefore, Defendants'
Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 91)
will be denied without prejudice pending the determination of
tribal court jurisdiction. Defendants' Omnibus Motion (Doc. 93)
will be granted in part in light of this court dismissing
current proceedings without prejudice pending tribal court
exhaustion and denied in part in that this court will not compel
arbitration at this time. Finally, Plaintiffs' Motion for
Discovery on Preliminary Issues (Doc. 98) and Defendants' Cross-
Motion to Stay Discovery (Doc. 104) will be denied without
prejudice.

---

[4] See, e.g. Spuller v. Cashcall, Inc., No. 5:13-CV-806-D
(E.D.N.C. Mar. 5, 2014); Milam v. Cashcall, Inc., No. 5:13-CV-
768-D (E.D.N.C. Mar. 4, 2014; and Chitoff v. Cashcall, Inc.,
No. 0:14-CV-60292 (S.D. Fla. Nov. 17, 2014).

[5] Heldt v. Payday Fin., LLC, 12 F. Supp. 3d 1170 (D.S.D.
Mar. 31, 2014).

## I.  <u>FACTS</u>

Plaintiffs filed the present action, a class action lawsuit, on behalf of North Carolina residents who have borrowed money from Defendants using "payday loans." Plaintiffs allege these loans are unlawful under North Carolina law forbidding "payday loan" arrangements, i.e., loans of relatively small amounts with high interest rates. Plaintiffs also allege putative class action claims on behalf of consumers in other states whose rights were allegedly violated by these loans. (Second Am. Complaint ("Compl.") (Doc. 89) at 1.)[6]

Each named Plaintiff is a citizen and resident of North Carolina and each named Plaintiff entered into a loan agreement with Defendant Western Sky and related entities. (<u>Id.</u> at 4-5.) Western Sky advertised primarily on television and any resulting loans were procured through internet and telephone transactions. (<u>Id.</u> at 5.) No loans were made in person. (<u>Id.</u> at 15.) Western Sky no longer offers such loans. (<u>Id.</u> at 19 n.7.) Plaintiffs filed the present action to recover monies collected by

---

[6] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Defendants that Plaintiffs claim was in violation of both North Carolina and federal law.[7]

At issue in the present action is whether or not this court has jurisdiction over these proceedings or, in the alternative, whether the contracts between the parties conferred jurisdiction on the CRST, and which court should make the initial determination. Western Sky is a limited liability company chartered under the law of South Dakota.[8] (Id. at 5.) Its

---

[7] Plaintiffs allege the loans violate the North Carolina Consumer Finance Act, N. C. Gen. Stat. § 53-164 et seq.; the usury statutes, N.C. Gen. Stat. § 24-2 et seq.; the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.; and North Carolina common law; Truth In Lending Act, 15 U.S.C. § 1601 et seq.; the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq.; and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (Compl. (Doc. 89) at 3.)

[8] According to Defendants, Western Sky is licensed by the CRST and Western Sky's offices are located on the CRST reservation, making Western Sky a CRST entity. (Defs.' Mem. of Law in Supp. of Omnibus Mot. to Dismiss or Stay ("Defs.' Omnibus Mem.") (Doc. 94) at 18.) Plaintiffs disagree with the assertion that Western Sky is a tribal entity, because it is organized under state, not tribal, law. (Compl. (Doc. 89) at 14.) Defendants explain that Western Sky's LLC organizational structure stems from the fact that the CRST has not established model business formation legislation allowing entities owned by tribal members to incorporate under tribal law, therefore, Western Sky is organized as a South Dakota LLC. (Defs.' Omnibus Mem. (Doc. 94) at 18.) In addition, Plaintiffs' allege that "[d]efendants cannot avoid liability . . . by mandating borrowers' assent to a fiction that the loans were made outside North Carolina." (Compl. (Doc. 89) at 31-32.) This court finds the uncertainty about whether or not any Defendant is a tribal entity is best first addressed by the tribal court.

principal place of business is in South Dakota. (Id.) Non-party Martin Webb ("Webb") is the owner and president of Western Sky and a resident of South Dakota. (Id. at 5.) Western Sky holds that it is owned by a member of the CRST. (Id. Ex. 3 at 2.)

The other Defendants are entities or individuals allegedly related to Western Sky's lending practice. Payday is a limited liability company chartered under the law of South Dakota with its principal place of business there. (Id. at 5.) Payday was the sole member of Western Sky during the time the Plaintiffs' loans were made and maintained. (Id.) CashCall is a California corporation with its principal place of business in California. CashCall was assigned many of Western Sky's loans. (Id. at 6.) Reddam is the President and CEO of CashCall and is CashCall's sole stock owner. (Id.) WS Funding, LLC is a wholly-owned subsidiary of CashCall. (Id.) WS Funding is a Delaware LLC and has a registered agent in Delaware. Reddam is the president of WS Funding. (Id.) Delbert is a Nevada corporation and Reddam is the sole director and owner. (Id. at 7.)

Plaintiffs allege that each Defendant had a specific role in the issuance and servicing of Plaintiffs' payday loans. Generally, to obtain a loan, a potential borrower would contact Western Sky via the internet or over the telephone. Plaintiffs applied for and received loans from Western Sky. When the loan

was approved, funds were directly transferred from Western Sky to the borrower's bank account. (Id. at 17.) Following the execution of the loan agreement, loans were immediately transferred from Western Sky to CashCall. All Plaintiffs' payments were made to CashCall. If any Plaintiff defaulted on a loan, CashCall and Delbert made collection efforts. (Id. at 14-15.)

The loans ranged in amounts from $300 to $3,000 and were payable in monthly installments. The terms ranged from 12 to 84 months. (Id. at 16.) According to the Complaint, the annual percentage rates ranged from 90 percent to over 300 percent. (Id.) For example, Plaintiff Thomas Brown ("Brown") obtained a loan for $2,600 from Western Sky. Western Sky retained $75, so Brown received $2,525 in the form of a loan. In exchange, Brown agreed to make 40 monthly payments at a nominal APR of 139 percent/effective APR of 273 percent, resulting in total payments of $14,102.87 to Western Sky. (Id. at 22.)

Defendants' pending motions to dismiss argue that Plaintiffs' loan agreements all contain enforceable forum selection and arbitration clauses rendering jurisdiction in this court inappropriate. Illustrative of the forum selection clauses and arbitration agreements, Plaintiff Monica Johnson's

("Johnson") August 17, 2011 loan agreement contained the following provision:

> Agreement to Arbitrate. You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

(Compl., Ex. 2, Monica Johnson Loan Agreement & Declaration (Doc. 89-2) at 4.) In addition, Johnson's loan agreement contains a choice of arbitrator:

> Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by a panel of three Tribal Elders and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer rules and the terms of this Agreement.

(Id. at 5.) Except for Brown's loan agreement, all of the loan agreements for the named Plaintiffs are similar to Johnson's in regard to the forum selection and arbitration agreements.

Brown's loan agreement (Id., Ex. 1, Thomas Brown Loan Agreement & Affidavit (Doc. 89-1)) is the most recent and contained different language. In Brown's agreement, dated July 5, 2012, the paragraph entitled, "Agreement to Arbitrate," states that, "You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized

representative in accordance with its consumer dispute rules and the terms of this Agreement." (Id. at 4.) Another paragraph in Brown's arbitration agreement, entitled "Choice of Arbitrator" states that, "you shall have the right to select any of the following arbitration organizations to administer the arbitration" and lists the American Arbitration Association (AAA), the Judicial Arbitration and Mediation Services (JAMS), or an arbitration organization agreed to by the parties. (Id.)

Defendants posit three theories to compel this court to grant their Omnibus Motion. First, Defendants suggest that the loan agreements include a valid and enforceable forum selection clause which mandates that the laws of the CRST govern this dispute, and thus the doctrine of forum non conveniens requires dismissal. (Omnibus Motion (Doc. 93) at 3.) Next, Defendants argue that Plaintiffs' claims implicate tribal court jurisdiction, requiring dismissal under the tribal exhaustion doctrine. (Id.) Finally, Defendants claim that the loan agreements contain an arbitration provision requiring all disputes arising from the loan agreements to be arbitrated, and as required by the Federal Arbitration Act ("FAA"), this court should either stay or dismiss this action. (Id. at 4.)

Because this court finds the forum selection clause and tribal exhaustion issues controlling at this stage of the proceedings, this order addresses only those two issues.

## II.  FORUM SELECTION CLAUSE

All Plaintiffs' loan agreements contain language stipulating that disputes and arbitration shall be conducted in accordance with the rules and law of the CRST, and that the CRST has jurisdiction over such matters.[9] This pre-selection of governing law and jurisdiction is a forum selection clause. The enforceability of the forum selection clause is the threshold question for this court.

### A.  Legal Standard

Generally, the Supreme Court requires that forum selection clauses be enforced.

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

---

[9] Named Plaintiffs' loan agreements contain such language. (See Docs. 89-1, 89-2, 89-7, and 89-9.)

Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of
Texas, 571 U.S. ____, ____, 134 S. Ct. 568, 583 (2013). In
Atlantic Marine, the Supreme Court clarified that the forum non
conveniens doctrine is the proper mechanism for enforcing a
forum selection clause when the selected forum is not another
federal court, but a foreign jurisdiction like the CRST. Id. at
580; see also Fidelity Bank PLC v. N. Fox Shipping N.V., 242
Fed. Appx. 84, 90 (4th Cir. 2007) (holding that the doctrine of
forum non conveniens has "continuing application in federal
courts only in cases where the alternative forum is abroad").

If the forum selection clause is contractually valid,[10]

> [A] court evaluating . . . a forum-selection clause
> should not consider arguments about the parties'
> private interests. When parties agree to a forum-
> selection clause, they waive the right to challenge
> the preselected forum as inconvenient or less
> convenient for themselves or their witnesses, or for
> their pursuit of the litigation. A court accordingly
> must deem the private-interest factors to weigh
> entirely in favor of the preselected forum.

Atlantic Marine, 134 S. Ct. at 582. However, courts do not
always enforce a forum selection clause.

> [T]he presumption of enforceability that forum
> selection and choice of law provisions enjoy is not
> absolute and, therefore, may be overcome by a clear
> showing that they are "'unreasonable' under the
> circumstances." Choice of forum and law provisions may

---

[10] It is important to note that "analysis presupposes a
contractually valid forum-selection clause." Atlantic Marine,
134 S. Ct. at 581 n.5.

be found unreasonable if (1) their formation was
induced by fraud or overreaching; (2) the complaining
party "will for all practical purposes be deprived of
his day in court" because of the grave inconvenience
or unfairness of the selected forum; (3) the
fundamental unfairness of the chosen law may deprive
the plaintiff of a remedy; or (4) their enforcement
would contravene a strong public policy of the forum
state.

Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir.

1996) (citations omitted).

B.  **Analysis**

Plaintiffs and Defendants do agree that the loan agreements

all contain forum selection clauses that state that the

agreements are governed by the "laws of the Cheyenne River Sioux

Tribe." (See, e.g., Compl. (Doc. 89); Omnibus Motion (Doc. 93).)

However, the parties' agreement seems to end there. Defendants

argue the forum selection clause is valid and enforceable

requiring this court to dismiss the present action. (Defs.'

Omnibus Mem. (Doc. 94) at 17.) Plaintiffs disagree, stating that

the forum selection clause fails because the CRST lacks

jurisdiction[11] and that this court is the proper venue for the current action. (Pls.' Br. in Opp'n to Defs.' Omnibus Motion to Dismiss ("Pls.' Br.") (Doc. 100).)

The forum selection and arbitration clauses at issue in the present action are identical or at least substantially similar to forum selection and arbitration clauses addressed in a number of different cases in different federal courts within the past year. Six of those cases illustrate the diversity in analysis of the issue presented. Two decisions are circuit court decisions and four are from district courts. The circuit court decisions are not from the Fourth Circuit, making them persuasive, but not binding authority. The district court decisions are also not binding on this court, but they are informative. Analysis of the litigation suggests that courts have addressed the forum selection clause in three ways: (1) the forum selection clause has been found unenforceable; (2) the forum selection clause has

---

[11] Plaintiffs also argue that the forum selection clause would be unreasonable to enforce, but this argument is based again on the lack of tribal court jurisdiction. (Pls.' Br. (Doc. 100) at 6.) Therefore, this does not warrant a separate analysis. In addition, Plaintiffs assert that the forum selection clause violates important state public policy. In Spuller v. Cashcall, No. 5:13-CV-806-D (E.D.N.C. Mar. 5, 2014), the Eastern District of North Carolina did not find that North Carolina public policy invalidated the forum selection clause based on similar arguments, so this court will focus its analysis on the tribal court jurisdiction issue, which was not presented to the Eastern District.

been enforced; or (3) the CRST has been provided an initial opportunity to determine the enforceability of the forum selection clause using the tribal exhaustion doctrine. This court provides a brief discussion of each approach.

### 1. **Forum Selection Clause Found Unenforceable**

In two separate actions involving the CRST as the selected forum, the Seventh and Eleventh Circuits found the forum selection clauses unenforceable. In Jackson v. Payday Financial,[12] plaintiffs asserted that "the forum selection clause is not valid because: (1) it furthers an illegal contract; (2) Plaintiffs' financial straits left them susceptible to Defendants' overreaching; and (3) it is contrary to Illinois' strong public policy." Jackson v. Payday Fin., LLC, No. 11 C 9288, 2012 WL 2722024, at *2 (N.D. Ill. July 9, 2012), rev'd and remanded, 764 F.3d 765 (7th Cir. 2014). In Jackson, the district court initially granted the defendants' motion to dismiss stating that the plaintiffs had not successfully invalidated the forum selection clause where "[t]he Loan Agreement states that any dispute arising under the Loan Agreement 'will be resolved by Arbitration, which shall be conducted by the Cheyenne River

---

[12] On August 25, 2014, Plaintiffs filed a Notice of Supplemental Authority pursuant to Local Rule 7.3(i) to notify this court of Jackson v. Payday Fin., LLC, 764 F.3d 765, 768-69 (7th Cir. 2014). (Doc. 110.)

Sioux Tribal Nation by an authorized representative . . . .'"

Id. The Jackson plaintiffs appealed. After oral argument, but before issuing a final ruling,

> [The Seventh Circuit] ordered a limited remand to the
> district court for further factual findings concerning
> (1) whether tribal law was readily available to the
> litigants and (2) whether arbitration under the
> auspices of the Cheyenne River Sioux Tribe, as set
> forth in the loan documents, was available to the
> parties. The district court concluded that, although
> the tribal law could be ascertained, the arbitral
> mechanism detailed in the agreement did not exist.

Jackson v. Payday Fin., 764 F.3d at 768. Following the limited remand, the Seventh Circuit's final opinion held that:

> [E]nforcement of the forum selection clause contained
> in the loan agreements is unreasonable. The loan
> agreements specify that disputes arising from the
> agreement "will be resolved by Arbitration, which
> shall be conducted by the Cheyenne River Sioux Tribal
> Nation by an authorized representative in accordance
> with its consumer dispute rules and the terms of this
> Agreement." Arbitration will be conducted by "either
> (i) a Tribal Elder, or (ii) a panel of three (3)
> members of the Tribal Council." The record clearly
> establishes, however, that such a forum does not
> exist: The Cheyenne River Sioux Tribe "does not
> authorize Arbitration," it "does not involve itself in
> the hiring of . . . arbitrator[s]," and it does not
> have consumer dispute rules. We have no hesitation
> concluding that an illusory forum is unreasonable.

Id. at 776.

The Eleventh Circuit also declined to enforce the forum selection clause granting jurisdiction to the CRST.[13] Before refusing to enforce the clause, the court first found that the clause was an integral part of the arbitration agreement.

> It is clear that the parties here intended the forum selection clause to be a central part of the agreement to arbitrate, rather than an ancillary logistical provision. The arbitration clause expressly provides "that any Dispute . . . will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement. . . ." In total, the contract references the Tribe in five of its nine paragraphs regarding arbitration. That the designation of the particular forum pervades the arbitration agreement is strong evidence that at least Western Sky, which drafted the contract, and whose majority shareholder is a member of the Tribe, considered arbitration conducted by the Tribe to be an integral aspect of the arbitration agreement.

Inetianbor, 768 F.3d at 1350-51 (citations omitted). After finding the forum an integral part of the arbitration agreement, the Eleventh Circuit went on to agree with the district court that the forum was unavailable making the arbitration clause unenforceable.

> Mr. Inetianbor presented the District Court with a letter from the Tribe explaining that "the Cheyenne

---

[13] On October 2, 2014, Plaintiffs filed a Notice of Supplemental Authority pursuant to Local Rule 7.3(i) to notify this court of Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1349 (11th Cir. 2014), petition for cert. filed, 83 U.S.L.W. 492 (U.S. Dec. 14, 2014)(No. 14-775). (Doc. 111.)

River Sioux Tribe, the governing authority[,] does not
authorize Arbitration." The Tribal Elder CashCall
initially chose to arbitrate the dispute expressed a
similar sentiment in response to Mr. Inetianbor's
question about whether the Tribe was aware of the
arbitrator selection process, explaining that because
"this is a private business deal[, t]he Tribe has
nothing to do with any of this business." Finally, the
fact that the arbitration clause calls for the
arbitration to be conducted according to consumer
dispute resolution rules that do not exist supports
the conclusion that the Tribe is not involved in
private arbitrations.

Id. at 1354.

### 2. **Forum Selection Clause Enforced**

In the Eastern District of North Carolina, the same judge
in two different cases granted defendants' motion to dismiss
"[i]n light of the contract's forum selection clause." See,
e.g., Spuller v. Cashcall, Inc., No. 5:13-CV-806-D (E.D.N.C.
Mar. 5, 2014); Milam v. Cashcall, Inc., No. 5:13-CV-768-D
(E.D.N.C. Mar. 4, 2014). In Milam, plaintiff Selena Milam did
not respond to defendant Cashcall's motion to dismiss or in the
alternative to stay and compel arbitration. The court there
simply granted the motion to dismiss, because the loan agreement
contained a forum selection clause which granted jurisdiction to
the CRST. (Milam v. Cashcall, Inc., 5:13-CV-768-D, Order (Doc.
15).) In the absence of a responsive pleading from the
plaintiff, Milam is not directly on point. However, in Spuller,
plaintiff Daniel Spuller did respond to defendant Cashcall's

motion to dismiss or to stay proceeding and compel arbitration.
Plaintiff Spuller argued that the loan agreement's forum
selection clause was obtained through fraud and overreaching and
its enforcement would be contrary to established public policy
of North Carolina. (Spuller v. Cashcall, Inc., 5:13CV806-D,
Pl.'s Resp. (Doc. 14).) In Spuller, the court found that the
plaintiff had not "plausibly alleged that either defendant
obtained the forum selection clause by fraud or overreaching,"
nor was the forum selection clause invalidated by North Carolina
public policy. (Id., Order (Doc. 16).) While persuasive on the
issues addressed, neither plaintiff in Spuller nor Milam argued
that the selected forum did not have jurisdiction as Plaintiffs
do in the present action. Nevertheless, each of those cases
persuades this court that on those or similar facts, dismissal
is an appropriate course.

In an order issued by the Southern District of Florida in
Chitoff v. Cashcall, Inc., No. 0:14-CV-60292 (S.D. Fla. Nov. 17,
2014), after the Eleventh Circuit found the same forum to be
unavailable in Inetianbor, the district court found for

defendants and compelled arbitration in the CRST.[14] Although the present analysis is limited to the forum selection clause, when analyzing the decision to compel arbitration, the Chitoff court addressed CRST jurisdiction.

> [M]ost importantly, Plaintiff has provided no evidence that the Cheyenne River Sioux Tribe is unavailable as an arbitration forum. . . .
>
> Plaintiff's failure to provide any evidence of the unavailability of the tribe as a forum is dispositive. Plaintiff has attempted to rely upon citations to other cases where the forum has been found unavailable in lieu of providing his own evidence. The Court therefore finds that Plaintiff has failed to meet his evidentiary burden to prove that the arbitration forum is unavailable or otherwise invalid.

Chitoff, Order at 2-3. Based on information provided by Plaintiffs, it appears likely that the forum selection and arbitration clauses at issue in Chitoff were similar to Brown's in the present action, which included the "'right to select any of the following arbitration organizations to administer arbitration' and then lists AAA, JAMS, or an arbitration organization agreed to by the parties." (Pls.' Br. (Doc. 100) at

---

[14] On November 11, 2014, Defendants filed a Notice of Subsequently Decided Authority. (Doc. 112.) Defendants' notice brought to the attention of this court an "Order Granting Defendants' Motion to Compel Arbitration" in the matter of Chitoff v. Cashcall, Inc., No. 0:14-CV-60292 (S.D. Fla., Nov. 17, 2014). In the order, the Southern District of Florida compels arbitration stemming from a loan agreement similar to the loan agreements at issue in the present action.

16.) It is notable that the district court in Florida found that plaintiff Chitoff had not shown the forum to be unavailable despite the controlling circuit court finding the same forum unavailable earlier the same year in <u>Inetianbor</u>.

### III. <u>**TRIBAL COURT EXHAUSTION**</u>

In addition to arguing that the forum selection clause should be enforced, Defendants argue that, because Plaintiffs' claims implicate tribal court jurisdiction, this court should dismiss or stay under the tribal exhaustion doctrine. (Defs.' Omnibus Mem. (Doc. 94) at 33.) The concept of federal court abstention in cases involving Indian tribes, known as the "tribal exhaustion rule," generally "requires that federal courts abstain from hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in a tribal court." <u>Jackson</u> 764 F. 3d at 784 (quoting <u>Garcia v. Akwesasne Hous. Auth.</u>, 268 F.3d 76, 79 (2d Cir. 2001)).

### A. <u>**Legal Standard**</u>

The tribal exhaustion doctrine directs that a federal court should "give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims" when a "colorable claim of tribal court jurisdiction has been

asserted." <u>Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.</u>, 207 F.3d 21, 31 (1st Cir. 2000).

Federal courts have not provided a definitive answer to the question of what constitutes a colorable claim of jurisdiction. Neither the Supreme Court nor the Fourth Circuit have addressed this issue. In discussing what merits a colorable claim, the Ninth Circuit noted the lack of clarity on the topic.

> One court has held that claims were reviewable because they were "not without some merit." <u>Jensen v. Schweiker</u>, 709 F.2d 1227, 1230 n.2 (8th Cir. 1983). Another court has indicated that a putative constitutional claim should be dismissed if it "'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'" <u>Holloway v. Schweiker</u>, 724 F.2d 1102 (4th Cir.)(quoting <u>Bell v. Hood</u>, 327 U.S. 678, 682–83, 66 S. Ct. 773, 76, 90 L.Ed. 939 (1946)), <u>cert. denied</u>, ____ U.S. ____, 104 S. Ct. 2664, 81 L.Ed.2d 369 (1984).

<u>Boettcher v. Sec'y of Health & Human Servs.</u>, 759 F.2d 719, 722 (9th Cir. 1985). More recently, in the situation of a constitutional claim, the Eleventh Circuit found that for a claim to be colorable, "the alleged violation need not be substantial, but the claim must have some possible validity." <u>Arias v. U.S. Attorney Gen.</u>, 482 F.3d 1281, 1284 n.2 (11th Cir. 2007) (internal citation omitted)

> When there is a "colorable question" as to whether a tribal court has subject matter jurisdiction over a civil action, a federal court should stay or dismiss the action so as to "permit a tribal court to

determine in the first instance whether it has the
power to exercise subject matter jurisdiction."

Madewell v. Harrah's Cherokee Smokey Mountains Casino, 730 F.

Supp. 2d 485, 488-89 (W.D.N.C. 2010) (internal citations

omitted).

> The tribal exhaustion doctrine is not
> jurisdictional in nature, but, rather, is a product of
> comity and related considerations. Where applicable,
> this prudential doctrine has force whether or not an
> action actually is pending in a tribal court.
> Moreover, the doctrine applies even though the
> contested claims are to be defined substantively by
> state or federal law.

Ninigret Dev. Corp., 207 F.3d at 31 (internal citations

omitted). The courts have created parameters to the tribal

court exhaustion doctrine.

> [T]here are four recognized exceptions to the
> requirement for exhaustion of tribal court remedies
> where: (1) an assertion of tribal jurisdiction is
> motivated by a desire to harass or is conducted in bad
> faith; (2) the action is patently violative of express
> jurisdictional prohibitions; (3) exhaustion would be
> futile because of the lack of adequate opportunity to
> challenge the court's jurisdiction; or (4) it is plain
> that no federal grant provides for tribal governance

of nonmembers' conduct on land covered by Montana's main rule.[15]

Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1200 (9th Cir.), cert. denied, ____ U.S. ____, 134 S. Ct. 825 (2013) (internal citations omitted).

## B. **Analysis**

Plaintiffs argue that the forum selection clause fails, because it confers subject matter jurisdiction on a court that does not have subject matter jurisdiction. (Pls.' Br. (Doc. 100) at 2.) Plaintiffs' argument is that the CRST court is a tribal court of limited jurisdiction and, therefore, cannot assert jurisdiction over the present action. (Id.) This is a different argument than the arguments to invalidate the forum selection clauses that were presented to the Eastern District of North

---

[15] The Supreme Court, in Montana v. United States, created two exceptions to the general rule that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." Montana, 450 U.S. 544, 565, (1981) "A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Id. In addition, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 565-66. (citations omitted). These two exceptions are referred to as the Montana exception or rule.

Carolina in Spuller[16] and Milam. This is also a different focus
than the Seventh Circuit and Eleventh Circuit took in Jackson[17]
and Inetianbor[18] when those courts invalidated the forum
selection clauses. The assertion that the CRST court does not
have jurisdiction creates not only a question of jurisdiction,
but also which court should determine whether or not the CRST
court has jurisdiction, this court or the CRST court.

A district court in South Dakota took a different
approach to evaluating the forum selection clause which
this court finds persuasive. The court found that,

> The only legitimate argument here for refusal to
> honor the forum-selection provision would be if the
> forum selected — the Cheyenne River Sioux Tribal Court

---

[16] Plaintiffs address the Spuller order in their Reply Brief
in Support of Motion Requesting Discovery on Preliminary Issues.
(Doc. 108.) Plaintiffs speculate that the Eastern District was
not aware of "relevant developments" in the Inetianbor case,
where the plaintiff tried to arbitrate per the loan agreement
and was unable to, when the Eastern District issued its "terse
March 5th order." (Id. at 2.)

[17] In evaluating whether tribal exhaustion should be
required, the Jackson court found that none of the Montana
exceptions were present to allow tribal court jurisdiction. "The
present dispute does not arise from the actions of nonmembers on
reservation land and does not otherwise raise issues of tribal
integrity, sovereignty, self-government, or allocation of
resources. There simply is no colorable claim that the courts of
the Cheyenne River Sioux Tribe can exercise jurisdiction over
the Plaintiffs. Tribal exhaustion, therefore, is not required."
Jackson, 764 F.3d at 786.

[18] The Eleventh Circuit did not address tribal court
exhaustion in the Inetianbor opinion.

— lacked jurisdiction, because it would be contrary to
public interest to enforce a venue selection provision
that selects a venue lacking jurisdiction. "[T]he
determination of the existence and extent of tribal
court jurisdiction must be made with reference to
federal law, not with reference to forum-selection
provisions that may be contained within the four
corners of an underlying contract." Thus, the effect
of the forum-selection clause turns on whether tribal
court jurisdiction exists under federal law.

Heldt, 12 F. Supp. 3d at 1170 (D.S.D. Mar. 31, 2014)

(quoting Ninigret Dev. Corp. v. Narragansett Indian

Wetuomuck Hous., Auth., 207 F.3d 21, 33 (1st Cir. 2000))

(citations omitted).

    "Indian tribes . . . generally lack legal authority over

people who are not tribal members." Id. at 1181. The Supreme

Court has recognized two specific exceptions to this general

rule. These are referred to as the Montana exceptions. See supra

note 15.

    The Supreme Court "begin[s] by noting that whether a

tribal court has adjudicative authority over nonmembers is a

federal question." Plains Commerce Bank v. Long Family Land &

Cattle Co., 554 U.S. 316, 324 (2008).

    In National Farmers Union, the Supreme Court stated:

    We believe that examination should be conducted
    in the first instance in the Tribal Court itself. Our
    cases have often recognized that Congress is committed
    to a policy of supporting tribal self-government and
    self-determination. That policy favors a rule that
    will provide the forum whose jurisdiction is being

challenged the first opportunity to evaluate the
factual and legal bases for the challenge.

Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S.

845, 856 (1985).

However, the Supreme Court went on to say,

We do not suggest that exhaustion would be required
where an assertion of tribal jurisdiction "is
motivated by a desire to harass or is conducted in bad
faith," or where the action is patently violative of
express jurisdictional prohibitions, or where
exhaustion would be futile because of the lack of an
adequate opportunity to challenge the court's
jurisdiction.

Id. at 856 n.21. (quoting Juidice v. Vail, 430 U.S. 327, 338

(1977).

Unlike the Seventh Circuit in Jackson, the district court

in Heldt found that there was a colorable claim of CRST

jurisdiction from the loan agreements. "The borrower certainly

does not enter onto a reservation, but in today's modern world

of business transactions through internet or telephone,

requiring physical entry on the reservation particularly in a

case of a business transaction with a consent to jurisdiction

clause, seems to be requiring too much." Heldt, 12 F. Supp. 3d

at 1186. Plaintiffs in the current action base a portion of

their argument asserting that North Carolina is implicated

because Defendants' payday loans were offered in North Carolina.

Using the Heldt analysis, however, Plaintiffs' logic can be used

- 27 -

to assert a colorable claim of tribal jurisdiction, because some
of Defendants' actions involved alleged tribal entities and/or
tribal members.[19]

Plaintiffs specifically address Heldt in their Reply Brief
and dispute that case's persuasive authority. (Pls.' Reply Br.
(Doc. 108) at 3-4.) After determining that there was a colorable
claim of CRST jurisdiction, the Heldt court ordered that,

> Defendants, as the parties asserting that there is
> tribal court jurisdiction and that there ought to be
> tribal court exhaustion, must file within thirty (30)
> days of the date of this Order a declaratory judgment
> action in the Cheyenne River Sioux Tribal Court naming
> the Plaintiffs herein to address to that court the
> issue of tribal court jurisdiction and if that court
> concludes it has jurisdiction, and the availability of
> an arbitration forum as specified in the loan
> agreements in this case. In such a tribal court
> action, Plaintiffs of course may contest tribal court
> jurisdiction and assert their arguments as the
> unavailability of an arbitration forum as specified in
> the agreements without waiving their assertion that
> there is no tribal court jurisdiction.

Heldt, 12 F. Supp. 3d at 1193. In their Reply Brief, Plaintiffs
further stated that they:

> [R]espectfully disagree with [the tribal court
> exhaustion] aspect of the Heldt Court's ruling and
> submit that this Court should properly find that the
> Tribal Court lacks subject matter jurisdiction for the
> reasons provided in Plaintiffs' prior briefs. However
> the Plaintiffs also submit that should this Court

---

[19] Plaintiffs' contracts state that the governing authority
in the event of dispute was the CRST. Named Plaintiffs' loan
agreements contain this language. (See Docs. 89-1, 89-2, 89-7,
and 89-9.)

conclude there are any open issues in that regard,
rather than exercising its discretion to order
exhaustion of Tribal remedies, it would be more
efficient and appropriate for this Court to simply
allow discovery on the issues concerning whether the
Tribal Court has any jurisdiction.

(Pls.' Reply Br. (Doc. 108) at 3.)

When deciding not to enforce the forum selection clause in
_Inetianbor_, the Eleventh Circuit had the benefit of a record of
the plaintiff's actual attempt to arbitrate within the
directives of his loan agreement. In coming to its decision in
_Jackson_, the Seventh Circuit relied on the course of events in
_Inetianbor_ and a record[20] of additional findings after limited
remand. _Jackson_, 764 F.3d at 769-71. In contrast, Plaintiffs in
the present action have researched CRST law and relied upon case
authority albeit with different fact records. However, like the
plaintiff in _Chitoff_, Plaintiffs in the present action have not
attempted to actually arbitrate or file any action in a CRST
court. (Compl. (Doc. 89) at 34-35.)

Plaintiffs in the current action located several sources of
relevant tribal law: (1) Cheyenne River Sioux Tribe Commercial
Code (February 5, 1997), (2) South Dakota Tribal Court Handbook
(Revised March 2006), and (3) Law and Order Code, Cheyenne River

---

[20] In _Jackson_, the Seventh Circuit explicitly stated that,
"[t]he record clearly establishes . . . that such a forum does
not exist." _Jackson_, 764 F.3d at 776.

Sioux Tribe (1978 Revision). (Id.) In addition, Plaintiffs were "provided a more complete set of the Tribal laws in other litigation[21] and learned that in fact the Tribal Code itself includes a usury statute." (Id. at 35.) Plaintiffs further state that "the loans violate this [usury] statute." (Id.) Then, Plaintiffs conclude this portion of their argument with:

> The purported arbitration facility of the Cheyenne River Sioux Tribal Nation was not a real arbitration organization but a sham. The Cheyenne River Sioux Tribal Nation has no "consumer dispute rules" governing arbitration.
>
> The Cheyenne River Sioux Tribal Nation is a biased and improper arbitral forum. Defendants have contended that the tribe and the reservation benefit financially from Defendants' payday lending operations, making it a biased arbitrator.

(Id. at 35.) Plaintiffs make a leap in their logic suggesting that the written documents stating the law of the CRST lead to the conclusion that the CRST arbitration forum is a "sham" without any action trying to actually arbitrate there.

Instead of presenting the question of whether or not the CRST is the correct court to litigate the validity of the forum selection and arbitration clause, Plaintiffs declare the CRST a "biased and improper" forum.  It is true that tribal courts "generally lack legal authority over people who are not tribal

---

[21] The "other litigation" referenced in the Complaint is most likely Inetianbor, where Plaintiffs' attorneys were the same as in the present action.

members." Heldt, 12 F. Supp. 3d at 1181. However, it is also true that "[t]he tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." Ninigret Dev. Corp., 207 F.3d at 31. The Eleventh Circuit found a claim colorable when the claim has "some possible validity." Arias, 482 F.3d at 1284 n.2. Only a colorable claim is needed for this court to allow tribal court exhaustion to determine the next step in the present action.

Within our own circuit, in both Spuller and Milam, the Eastern District dismissed similar actions based on the forum selection clause without addressing the jurisdiction of the CRST forum, suggesting at least possible validity to the clauses. More recently in Chitoff, the Southern District of Florida compelled arbitration in the CRST forum when the plaintiff relied on other lawsuits and provided no evidence that the CRST was an unavailable forum.

There is nothing in the current record suggesting any actions taken by Plaintiffs themselves to warrant a finding by this court that the CRST is a fraudulent forum and not the proper jurisdiction for the action, when Plaintiffs entered into

contracts which clearly stated that it is. On the present record, it would be inappropriate for this court to assume that another court is unable to decide whether or not it is the proper jurisdiction without allowing that court the first attempt to answer the question.

**IV.   CONCLUSION**

Instead of attempting to litigate in the CRST court, Plaintiffs in the present action request this court grant further discovery to determine whether or not the CRST has jurisdiction over the present matter and whether the CRST can arbitrate at all. (Doc. 98.) Because this court finds that Defendants have asserted at least a colorable claim of CRST jurisdiction, this court is persuaded by the <u>Heldt</u> court approach and with requiring tribal court exhaustion.

This court is aware of the facts that underlie the decisions of the Seventh and Eleventh Circuits finding the CRST forum unavailable. Because plaintiffs in those actions were able to persuade those courts that the CRST was not the proper arbitration forum, there is at least a possibility the CRST will not have jurisdiction over the present action and/or the CRST forum for arbitration will not be available. Because of the uncertainty that remains with the availability and jurisdiction of the CRST, this court will dismiss the present action without

prejudice.[22] Plaintiffs may file a subsequent action in this court if tribal court exhaustion finds that this court is the proper jurisdiction for the action or proves futile.[23]

For the reasons explained above, **IT IS HEREBY ORDERED** that the Motion to Dismiss for Lack of Personal Jurisdiction filed by

---

[22] In addition to the Omnibus Motion (Doc. 93), Defendants Payday and Reddam filed their own Motion to Dismiss (Doc. 91) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Thus far, Defendants Payday and Reddam do not argue that the CRST lacks jurisdiction over them with regard to the pending matter. Therefore, this court deems it proper to defer ruling on any challenges to personal jurisdiction at this time pending tribal court exhaustion in accordance with this present Memorandum Opinion and Order.

[23] This court anticipates either Plaintiffs or Defendants shall file an action in the CRST in response to this order, and this order is entered without prejudice to Plaintiffs' right to re-file in the appropriate forum. This court is also aware of Plaintiff's concerns with respect to the limitations on access to the CRST as found and explained by some of the cases described herein. See, e.g., Inetianbor v. CashCall, Inc., 768 F.3d 1346 (11th Cir. 2014), petition for cert. filed, 83 U.S.L.W. 492 (U.S. Dec. 14, 2014)(No. 14-775); Jackson v. Payday Fin., LLC, 764 F.3d 765 (7th Cir. 2014). This ruling is not intended to deprive Plaintiffs of a forum or a remedy. Therefore, in the event a final resolution of the issues before the CRST does not occur before an otherwise applicable statute of limitations or similar bar would arise in this court, Plaintiffs may refile their action in this court and request a stay pending final resolution in the CRST. In light of the fact that Defendants have argued that jurisdiction is proper in the CRST [and, if applicable, that the CRST is an available forum], this court does not see any reason that Defendants would challenge jurisdiction in the CRST. In the event Plaintiffs determine that re-filing is necessary in this court, Plaintiffs may, as part of that filing, advise this court to the extent Defendants take any positions inconsistent with their representations in this court as to CRST jurisdiction and the CRST as an appropriate forum.

Defendants Payday Financial, LLC, and John Paul Reddam (Doc. 91) is **DENIED WITHOUT PREJUDICE** pending the determination of tribal court jurisdiction.  Upon conclusion of any action in the tribal court, the motion may be refiled in a subsequent action in this court to the extent ripe and relevant.

    **IT IS FURTHER ORDERED** that all Defendants' Omnibus Motion to Dismiss (Doc. 93) is **GRANTED IN PART** in that this court **DISMISSES WITHOUT PREJUDICE** the present proceedings pending tribal court exhaustion and **DENIED IN PART** in that arbitration is not compelled by this court at this time.

    **IT IS FURTHER ORDERED** that Plaintiffs' Motion Requesting Discovery on Preliminary Issues (Doc. 98) and Defendants' Cross-Motion to Stay Discovery (Doc. 104) are **DENIED**.

    This the 30th day of January, 2015.

_____
United States District Judge